### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOSEPH H. SCHROEDER, II,**<br><br>    Plaintiff,<br><br>v.<br><br>**WICHITA POLICE DEPARTMENT, et al.,**<br><br>    Defendants. | **Case No. 20-1216-DDC-GEB** |

### MEMORANDUM AND ORDER

Pro se[1] plaintiff Joseph H. Schroeder II brings a long list of claims against defendants Sedgwick County District Attorney, State of Kansas 18th Judicial District, and Wichita Police Department.  Doc. 1 at 1–2, 5 (Compl. ¶¶ 1, 2, 5, 25).[2]  Each defendant has filed a Motion to Dismiss and a corresponding Memorandum in Support.  *See* Docs. 16 & 17; Docs. 18 & 19; Docs. 20 & 21.  Plaintiff has not responded to any of defendants' motions to dismiss.

---

[1] Plaintiff is a frequent pro se litigant before our court.  *See Schroeder v. Gallegos*, No. 20-1036-JAR-GEB, 2020 WL 2084889, at *1 (D. Kan. Apr. 30, 2020) (noting that Mr. Schroeder "has a lengthy history of filing unsuccessful pro se litigation against various business entities in the District of Kansas"). While he is experienced at litigating his own claims—this lawsuit is his eighth in the District of Kansas in recent years—plaintiff proceeds pro se here, so the court construes his pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as plaintiff's advocate.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  The court does not construct arguments for plaintiff or search the record.  *Id.*  And plaintiff's pro se status does not excuse him from complying with the court's rules or facing the consequences of noncompliance.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[2] Plaintiff opens his Complaint by demanding a jury trial against "Defendant The State of Kansas Department of Labor Unemployment Compensation Division."  Doc. 1 at 1 (Compl.).  Given everything else within the Complaint, *see, e.g.*, *id.* at 2 (Compl. ¶ 5) (including no mention of Kansas Department of Labor); Doc. 1-1 at 1 (same), the court understands plaintiff to have mentioned the Kansas Department of Labor erroneously and thus does not consider that entity to be a defendant in this case.

But this procedural backstory might be news to plaintiff. He has proved difficult to reach. Efforts by both the court and defendants to contact plaintiff at two different addresses were fruitless.[3] Many mailings sent to Mr. Schroeder at the address he registered with the court have been returned to sender. *See, e.g.*, Doc. 22; Doc. 23; Doc. 25; Doc. 31; *see also* Doc. 29 (sent to Florida address and returned to sender). Before turning to the motions' merits and explaining why the court grants each defendant's Motion to Dismiss, the court first addresses plaintiff's failure to respond to the motions and other court mailings.

## I.     Plaintiff's Failures to Respond

Defendants each filed a Motion to Dismiss in mid-November 2020. *See* Doc. 16 (filed Nov. 12, 2020); Doc. 18 (filed Nov. 13, 2020); Doc. 20 (filed Nov. 17, 2020). Our court's local rules required plaintiff to file his Responses to the motions within 21 days. D. Kan. Rule 6.1(d)(2). So, the latest of the three deadlines to file a Response was December 8, 2020. That deadline passed roughly two months ago. To date, plaintiff never has responded to any defendant's Motion to Dismiss, let alone in a timely fashion.

Hoping that it might prod plaintiff to respond and explain his silence, the court issued a Notice and Order to Show Cause (Doc. 30) on January 15, 2021 (docketed Jan. 19, 2021). The Order (1) directed "plaintiff to show cause, in writing, on or before January 30, 2021, why it should not consider and rule on defendants' motions as uncontested motions under D. Kan. Rule 7.4(b)" and (2) notified plaintiff that if he "intends to file responses to defendants' motions, he must file them on or before January 30, 2021." Doc. 30 at 2. The court explained that D. Kan. Rule 7.4(b) governs the failure to file responsive briefs in a timely fashion and the consequences

---

[3]     In his August 2020 Motion to Transfer Case and Change Venue (Doc. 8), plaintiff instructed the court to use his Derby, Kansas mailing address "even having returned to Miami[ ] in September 2020." Doc. 8 at 1.

of failure. *See id.* at 1–2. But the Show Cause Order never reached plaintiff. Alas, it too was returned to sender. Doc. 31.

Our local rules provide: "If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice." D. Kan. Rule 7.4(b). As explained above, the court attempted to warn plaintiff of this possibility, plaintiff's failure to update his address and contact information as required by this District's local rules stymied that attempt. *See* D. Kan. Rule 5.1(c)(3) (requiring a pro se plaintiff to "notify the clerk in writing of any change of address or telephone number"). Because plaintiff has failed to respond to defendants' motions to dismiss in a timely fashion, the court could grant those motions as unopposed, as D. Kan. Rule 7.4(b) explains that the court "ordinarily" does. But these times are extraordinary after all. Because the COVID-19 pandemic continues to disrupt life as we once knew it, the court hesitates before simply granting the motions to dismiss as uncontested without considering the motions' content.

So, the court considers the motions' arguments for dismissal on their merits. But first, the court provides the colorful factual context from which this lawsuit arises.

## II.     Background[4]

Plaintiff and Jenna Gallegos met on a dating website. Doc. 1 at 2 (Compl. ¶ 6.a). The online encounter blossomed into a two-year relationship. *Id.* at 3 (Compl. ¶ 7). But in January 2020, a storm swept through and left few blooms intact.

---

[4]    The court takes the following facts from the Complaint (Doc. 1) and views them in the light most favorable to plaintiff. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (explaining that the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]" (citation and internal quotation marks omitted)).

On January 11 and 12, 2020, plaintiff and Ms. Gallegos exchanged text messages discussing their plans to have dinner together on January 13. *Id.* (Compl. ¶ 8.b). The couple planned a variation of the classic *dinner and a movie*—plaintiff would "grill steaks" and Ms. Gallegos would "stay the night and binge watch Doctor Who." *Id.* (Compl. ¶ 7). But the evening did not go according to plan.

At some point before their planned date, plaintiff got wind of "screen shots supporting" that Ms. Gallegos "had committed unconscionable acts." *Id.* Those screenshots induced plaintiff not only to cancel the dinner plans, but to end the relationship. *Id.* Ms. Gallegos reacted by sending plaintiff "a long series of abusive and threatening" text messages. *Id.* (Compl. ¶ 8). Plaintiff "responded to her texts to try and calm her down." *Id.* (Compl. ¶ 8.a). The drums of war soon turned to songs of peace, and the two "agreed to part as friends." *Id.* (Compl. ¶ 8).

But détente was short lived. Only an hour after agreeing to their reconciliation, Ms. Gallegos successfully "filed a Protection from Stalking Order against [plaintiff] in retaliation for being 'abandoned[.]'" *Id.*; *see also id.* at 4 (¶ 17). Ms. Gallegos offered no document to support her request, but she did allege that plaintiff had called her "a liar." *Id.* at 4 (¶ 17). Plaintiff attempted to file his own Protection from Stalking Order. *Id.* He supported his request "with copies of the messages" Ms. Gallegos sent to plaintiff, including threats to his life and comments about his grandchildren. *Id.* Plaintiff's request was denied. *Id.*

On January 30, 2020, plaintiff and Ms. Gallegos agreed, and a judge granted that the Protection from Stalking Order would be reciprocal—its terms would apply to both plaintiff and Ms. Gallegos. *Id.* at 3–4 (Compl. ¶ 9). Then the trouble began. Plaintiff began to receive hundreds of "harassing and threatening messages" from fake Twitter and Facebook accounts.

4

*Id.* at 4 (Compl. ¶ 10). The social media accounts called plaintiff names and threatened a visit from someone who would "kick [plaintiff's] ass." *Id.*; *see also id.* at 2 (Compl. ¶ 6.b). The accounts also targeted plaintiff's friends, employers, and the dating site he had used. *Id.* (Compl. ¶ 6.a). By March 2, 2020, Ms. Gallegos had violated the reciprocal protective order more than 100 times. *Id.* (Compl. ¶ 6.c). "She also began to spread rumors of sexual battery about" plaintiff throughout "the Wichita State Sorority system[.]" *Id.* at 4 (Compl. ¶ 10). Given earlier instructions from the U.S. Courts Clerk's Office, plaintiff contacted Ms. Gallegos's sorority "and advised them that if the slander and [libel] did not cease, [he] would sue them." *Id.* (Compl. ¶ 11).

Plaintiff then sued Ms. Gallegos in federal court for libel and slander. *Id.* (Compl. ¶ 12). Plaintiff sought to confirm that he could send Ms. Gallegos—as defendant in plaintiff's defamation suit—court documents without violating the "mutual no-contact order issued by the state of Kansas." *Id.* Plaintiff sought guidance from a local police department, the federal court, and the state prosecutor. The "Clerks of the US Court" told plaintiff that the state issued Protection from Stalking Order "did in no way interfere with" plaintiff's ability to send court documents to Ms. Gallegos. *Id.* A representative of the Sedgwick County District Attorney's Office provided plaintiff similar information. But a detective of the Wichita Police Department advised that plaintiff could not send the court documents. *Id.* (Compl. ¶ 16). The detective counseled plaintiff that he "should take the harassment and death threats 'like a man & [ ]wear the big boy pants[.]'" *Id.*; *see also id.* at 2 (Compl. ¶ 6.f). Plaintiff asked the detective to contact Ms. Gallegos to notify her that "she was in violation of the no contact" Order. *Id.* at 4 (Compl. ¶ 16). The detective declined to execute plaintiff's request. *Id.*

5

On March 2, 2020, a state court judge allowed plaintiff to file a "Citation of Contempt" against Ms. Gallegos. *Id.* (Compl. ¶ 15). The state court instructed plaintiff that he "had to mail that Citation of Contempt [d]irectly to Ms. Gallegos, and that doing so did not violate the [Protection from Stalking Order]." *Id.* Two days later, the Wichita Police Department arrested and jailed plaintiff for filing and mailing the Citation of Contempt against Ms. Gallegos. *Id.* at 5 (¶ 18). The District Attorney charged plaintiff. *Id.* (Compl. ¶ 21). Plaintiff's bail was set at $10,000. *Id.* (Compl. ¶ 23).

Plaintiff then filed this lawsuit under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.[5] *Id.* at 1 (Compl. ¶ 1–2). He asserts that the above-described events violated his Constitutional rights under the Second, Fourth, Fifth, Sixth, Eight, and Ninth Amendments of the Constitution; and he also asserts sex discrimination violating Title VII. *Id.* at 5 (Compl. ¶ 25); *see also* Doc. 1-1 at 1. Plaintiff seeks relief in the form of (1) $75,000 in damages from each defendant, (2) a ruling from the court that vacates any and all charges or Orders from the 18th Judicial Court of Kansas in this matter and deems those charges and Orders to violate plaintiff's civil rights, and (3) "whatever action [the court] feels necessary to [e]nsure this kind of [ ] abuse of power can never happen again." Doc. 1 at 5–6 (Compl. ¶ 26). Plaintiff filed a Motion for Leave to Proceed *in Forma Pauperis* (Doc. 3) which the court granted. *See* Doc. 9 at 1–2.

Each defendant has filed a motion to dismiss plaintiff's claims. *See* Doc. 16; Doc. 18; Doc. 20. The motions assert various theories supporting dismissal of plaintiff's claims.

---

[5] Plaintiff originally filed this action in the United States District Court for the Southern District of Florida. *See* Doc. 1 at 1. But, *sua sponte*, the Southern District of Florida concluded that it was not a proper venue under 28 U.S.C. § 1391(b), and transferred the case to the District of Kansas under 28 U.S.C. § 1406(a). Doc. 5 at 1–2. Plaintiff then filed a Motion to Transfer (Doc. 8) the case back to the Southern District of Florida, which the court denied. *See* Doc. 10 at 6.

Defendants Sedgwick County District Attorney and State of Kansas 18th Judicial District each move for dismissal under § 1915(e)(2)(B)(ii), Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Doc. 17 at 1; Doc. 19 at 1. Defendant Wichita Police Department moves to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed R. Civ. P. 12(b)(l), (2). Doc. 21 at 1.

Next, the court considers these reasons for dismissing plaintiff's claims.

### III. Discussion

Plaintiff brings claims under § 1983 and Title VII of the Civil Rights Act of 1964. Doc. 1 at 1 (Compl. ¶¶ 1–2). He seeks relief of several kinds. *First*, plaintiff seeks retrospective relief in the form of money damages and an act by the court vacating prior state court actions. *Id.* at 5–6 (Compl. ¶ 26). *Second*, he seeks prospective relief in the form of some court action to prevent future abuses of power by defendants. *Id.* at 6 (Compl. ¶ 26). Ultimately, each claim for each form of relief suffers from at least one defect that justifies its dismissal. Given that multiple defects doom plaintiff's claims, this Memorandum and Order endeavors to resolve defendants' three motions to dismiss justly and efficiently. *See* Fed. R. Civ. P. 1 (noting that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

The court begins by examining plaintiff's claim for *prospective* relief and determining whether he has standing to bring that claim for relief.

### A. Whether Plaintiff has Article III Standing to Bring Claims for Prospective Relief

The court carries an independent obligation to satisfy itself that subject matter jurisdiction exists. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). And the court "must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction

7

is lacking." *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(h)(3). Concerned that it might lack subject matter jurisdiction over some or all of plaintiff's claims, the court considers whether plaintiff satisfies the constitutional requirements for standing to pursue the prospective injunctive relief he seeks.

The court first explains the legal standard governing Article III standing and then explains why plaintiff lacks standing to bring his claim for prospective injunctive relief.

### 1. Legal Standard

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue. *Id.* The standing doctrine developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" and its application "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citations omitted).

Article III standing requires the plaintiff to demonstrate: (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]" (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted). "Each plaintiff must have standing to seek *each*

8

*form of relief* in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (emphasis added); *see also Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018).

At the "pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). But general factual allegations are sufficient to carry plaintiffs' burden of establishing those elements because the court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "At bottom, the gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation and internal quotation marks omitted).

### 2. Analysis

"Plaintiffs have the burden to demonstrate standing for each form of relief sought." *Redmond*, 882 F.3d at 942 (citation and internal quotation marks omitted). Here, one form of relief plaintiff seeks is prospective relief to prevent future injuries—future abuses of power. Doc. 1 at 6 (Compl. ¶ 26). He asks the court to grant "whatever action [the court] feels necessary to [e]nsure this kind of [ ]abuse of power can never happen again." *Id.*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "In a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." *Finstuen v.*

*Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983)).

Plaintiff here fails to explain how the future abuses of power he seeks to restrain are more than conjectural or hypothetical. His subjective apprehensions—that the defendants might unlawfully abuse their power in the future—are insufficient to show an injury in fact for purposes of Article III standing. *Id.* Plaintiff fails to link his request for prospective relief to any ongoing harm or real and immediate threat of future injury. So, he lacks standing to bring his claim for that form of relief. *See Auman v. Kansas*, No. 17-2069-DDC-JPO, 2018 WL 587232, at *6 (D. Kan. Jan. 29, 2018) (concluding that plaintiff lacked standing where "plaintiff's claims contain no factual allegations suggesting that he is suffering a continuing injury or under a real and immediate threat of being injured in the future" and "[i]nstead . . . requests injunctive relief to prevent certain alleged constitutional violations from 'ever happening again'").

The court thus lacks subject matter jurisdiction over plaintiff's claim for prospective injunctive relief. The court dismisses that claim for relief against all defendants. Next, the court turns to defendants' assertions that the court should dismiss plaintiff's remaining claims for relief.

### B.  Whether Wichita Police Department Lacks the Capacity to be Sued

Defendant Wichita Police Department invokes Fed. R. Civ. P. 12(b)(1) and (2) and asks the court to dismiss plaintiff's claims against it because the Department lacks the capacity to be sued. Doc. 21 at 2. The law enforcement agency asserts that under "Kansas law, in the absence of specific statutory authority granting a governmental entity the capacity to sue or be sued, a governmental body is not capable of being sued" and that the Wichita Police Department is part

10

of the City of Wichita and "is not a separate municipality or entity with the capacity to be sued." *Id.* at 2–3.[6]  The court agrees.

The Wichita Police Department "is a sub unit of government and cannot be sued absent specific statutory authority." *Barngrover v. Cnty. of Shawnee*, No. 02-4021-JAR, 2002 WL 1758914, at *2 (D. Kan. June 10, 2002). Plaintiff identifies no statutory authority authorizing suit against the Wichita Police Department. So, the court grants Wichita Police Department's Motion to Dismiss (Doc. 20) and dismisses plaintiff's claims against it. *See id.*

Having concluded that all claims against defendant Wichita Police Department merit dismissal, the court next considers the remaining defendants' arguments for dismissal of the claims against them. The court begins with their arguments under Fed. R. Civ. P. 12(b)(1).

## C. Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(1)

Sedgwick County District Attorney and 18th Judicial District filed separate motions that invoke Fed. R. Civ. P. 12(b)(1) and ask the court to dismiss plaintiff's claims against them for lack of subject matter jurisdiction. *See* Doc. 16; Doc. 18.  Both motions root their arguments for dismissal under Rule 12(b)(1) in the Eleventh Amendment's grant of state sovereign immunity. The court recites the standard governing motions under Fed. R. Civ. P. 12(b)(1) and then considers whether the remaining defendants—Sedgwick County District Attorney and 18th Judicial District—enjoy immunity under the Eleventh Amendment.

### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction

---

[6] The Wichita Police Department also argues that because it is incapable of being sued, the process and service of process are deficient. *Id.* at 3. It argues that these deficiencies provide alternative bases for dismissal. *See id.*; *see also* Fed. R. Civ. P. 12(b)(4)–(5).

and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Kinney v. Blue Dot Servs.*, 505 F. App'x 812, 814 (10th Cir. 2012) (explaining that the "court may not assume that a plaintiff can establish subject matter jurisdiction; it is the plaintiff's burden to prove it"). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

### 2. Analysis

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

But, the Supreme Court has recognized that "this immunity from suit is not absolute[.]" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Supreme Court has "recognized only two circumstances in which an individual may sue a State." *Id.* "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Id.* "Second, a State may waive its sovereign immunity by consenting to suit." *Id.*

The court now considers whether the Eleventh Amendment immunizes the remaining defendants from plaintiff's claims under 42 U.S.C. § 1983.

### a. Whether the Remaining Defendants are Immune to Plaintiff's § 1983 Claims

State sovereign immunity applies to actions under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "'Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.'" *Amaro v. New Mexico*, 737 F. App'x 882, 888 (10th Cir. 2018) (quoting *Will*, 491 U.S. at 66). Our Circuit has explained that "*Will* bars claims for retroactive relief that are brought against state officials in their official capacities . . . ." *Id.*

Here, plaintiff seeks monetary damages and an Order vacating the 18th Judicial District's prior Orders— relief of a retrospective nature. Doc. 1 at 5–6 (Compl. ¶ 26). And he seeks these remedies against all three defendants, two of whom—a Kansas district court and a Kansas state prosecutor—are arms of the State of Kansas.[7] So, unless these two arms of the Sunflower State have waived their immunity, the court lacks subject matter jurisdiction to hear a § 1983 claim for these retrospective remedies against them. Plaintiff does not assert any waiver, and no wisp of a waiver otherwise presents itself. So, the court lacks subject matter jurisdiction over plaintiff's claims for retrospective relief against defendants Sedgwick County District Attorney and the

---

[7] *See Johnson v. Schmidt*, No. 20-3017-SAC, 2020 WL 2126700, at *3–4 (D. Kan. May 5, 2020) (first noting "Kansas state law clearly characterizes the district courts as arms of the state government . . .", then noting that to "'the extent that [a county district attorney's office] is an entity that can be sued, [it] is a branch or agency of the state under applicable law and, therefore, is also immune under the Eleventh Amendment'" (citation and internal quotation marks omitted)); *see also White v. Blackwell*, 343 F. App'x 341, 342 (10th Cir. 2009) (holding that to the extent that plaintiff seeks damages under § 1983 against county prosecutor "in her official capacity, his suit is barred by Eleventh Amendment sovereign immunity").

13

18th Judicial District.  The court thus grants Sedgwick County District Attorney and the 18th Judicial District's respective motions to dismiss, Docs. 16 & 18, for the § 1983 claims for monetary damages and an Order from this court vacating the state court's prior Orders.[8]

Having determined that the court must dismiss all claims for prospective injunctive relief, all claims against Wichita Police Department, and the § 1983 claims for retrospective relief against the remaining defendants, the court turns to consider the motion to dismiss plaintiff's remaining claim for retrospective relief against the remaining defendants—plaintiff's Title VII claim.

### D.  Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964.  *See* Doc. 1 at 5 (Compl. ¶ 25); *see also* Doc. 1-1 at 1.  All three defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failing to state a claim.  Defendants Sedgwick County District Attorney

---

[8]    Defendants also assert that plaintiff's request that the court vacate state court Orders cannot overcome the ramparts of the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'"  *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  *Id.* at 466.  To allow otherwise would contravene 28 U.S.C. § 1257, which confers jurisdiction to hear appeals from final state-court judgments only on the Supreme Court. *Id.* at 463.  The *Rooker-Feldman* doctrine thus precludes the lower federal courts "from exercising appellate jurisdiction over final state-court judgments."  *Id.*  To the extent plaintiff asks the federal court to vacate any final state court judgments, the *Rooker-Feldman* doctrine bars the court from doing so.

And "even if the state court proceedings remain ongoing, this [c]ourt must abstain from interfering with those proceedings under the *Younger* abstention doctrine."  *Schroeder v. Gallegos*, No. 20-1036-JAR-GEB, 2020 U.S. Dist. LEXIS 77086, at *6 (D. Kan. Apr. 13, 2020), *report and recommendation adopted* 2020 WL 2084889, at *1 (D. Kan. Apr. 30, 2020) (applying *Younger* to the same underlying state court litigation at issue here).  Plaintiff has not asserted any valid exception to that doctrine and the remaining defendants, having invoked *Younger*, *see* Doc. 17 at 6–7, Doc. 19 at 5–6, have not waived that issue, *see Gauntlett v. Cunningham*, 171 F. App'x 711, 712 (10th Cir. 2006) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986)) (concluding that plaintiff "does not meet one of the three narrow exceptions to *Younger* abstention" and that "the State has not consented to federal jurisdiction of the matter, as it has consistently argued in the federal district court and on appeal that a federal court should not intervene in [plaintiff's] state criminal prosecution").

and 18th Judicial District explicitly or implicitly assert that plaintiff fails to state a Title VII claim because Title VII applies only to employer-employee relations not present here. *See* Doc. 17 at 5; Doc. 19 at 5. Below, the court recites the legal standard governing motions to dismiss under Rule 12(b)(6) and then considers whether the Complaint fails to state a Title VII claim.

### 1. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the Complaint's factual allegations are true. *Id.* (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

15

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

Next, the court considers whether plaintiff's Title VII claim satisfies this pleading standard.

### 2. Analysis

Plaintiff brings a claim under Title VII of the Civil Rights Act of 1964. "Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). "To set forth a prima facie case of discrimination, a plaintiff must establish that (1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action, (3) [he] qualified for the position at issue, and (4) [he] was treated less favorably than others not in the protected class." *Id.*

The Complaint simply alleges nothing about plaintiff ever having entered or sought an employment relationship with any defendant. He fails to plead "factual content that allows the court to draw the reasonable inference that" any of the defendants are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). His Title VII claims thus lacks facial plausibility. *See id.* The court dismisses them under Fed. R. Civ. P. 12(b)(6) accordingly.

## IV. Conclusion

Plaintiff brings claims for both retrospective and prospective relief against three defendants under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.  Defendants each filed a motion to dismiss those claims.  Plaintiff never responded to those motions, despite the court's patience and affirmative efforts to spur plaintiff into action.  The court could grant the motions as unopposed, but instead grants them because each of plaintiff's claims for relief suffers from one or more defects that justifies dismissal.

Plaintiff fails to state a Title VII claim because he alleges no facts about an employer-employee relationship of any kind with any defendant.  Plaintiff lacks standing under Article III to bring his claims for prospective relief because to support those claims he alleges only theoretical future harm and not an injury in fact.  Defendant Wichita Police Department lacks the capacity to be sued.  And the other two defendants—Sedgwick County District Attorney and State of Kansas 18th Judicial District—are arms of the state of Kansas and thus enjoy state sovereign immunity under the Eleventh Amendment unless abrogated or waived.  Congress has not abrogated that immunity for § 1983 claims, and defendants have not waived that immunity or otherwise consented to suit in federal court.  So, Sedgwick County District Attorney and State of Kansas 18th Judicial District are immune from plaintiff's § 1983 claims and the court thus lacks subject matter jurisdiction over those claims.

For these reasons, the court grants each defendant's motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sedgwick County District Attorney's Motion to Dismiss (Doc. 16) is granted.  Plaintiff's Title VII claim is dismissed with prejudice, and his § 1983 claims are dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant State of Kansas 18th Judicial District's Motion to Dismiss (Doc. 18) is granted.  Plaintiff's Title VII claim is dismissed with prejudice, and his § 1983 claims are dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Wichita Police Department's Motion to Dismiss (Doc. 20) is granted.  Plaintiff's claims against Wichita Police Department are dismissed without prejudice.

**IT IS SO ORDERED.**

**Dated this 22nd day of February, 2021, at Kansas City, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**